(95 South. 453)

### BERRY v. STATE.   (7 Div. 310.)

(Supreme Court of Alabama.   Feb. 8, 1923.)

**I. Infants ⬥68—Order of probate court retransferring cause to circuit court under Juvenile Court Law held not error.**

Where a boy under 16 years of age was presented in the circuit court under a charge of murder, and an order entered transferring the cause to the probate court as provided by Juvenile Court Law, § 9, and after hearing the probate court concluded he could not be reformed, there was no error in ordering the cause retransferred to the circuit court on the same day it was set for hearing in that court, rather than awaiting the time for him to be put on probation, which the statute does not require.

**2. Infants ⬥65—Juvenile Court Law held not to modify common-law presumption that child between 7 and 14 is incapable of crime.**

The common-law rule that a child between the ages of 7 and 14 years is presumably incapable of committing a crime has not been modified by the Juvenile Court Law, fixing age for juvenile delinquents at 16 years for males, and, where a cause is retransferred from the juvenile court to the circuit court thereunder, defendant is tried under the same rules as govern others charged with offenses.

**3. Criminal law ⬥725 — Solicitor's argument held improper.**

Statements in argument of the solicitor that, as defendant "is an interested party, you have a right to weigh what he said in the case, and, in other words, it is a case where you can break his neck on the gallows or send him to the pen for life," and that "You know what your duty is; if I was on the jury I would hang him. There are men in this audience watching to see what you are going to do who want to do the same thing that" defendant did, was improper.

**4. Criminal law ⬥823(2) — Charge including statement "that a crime has been committed" not reversible error.**

In a murder prosecution, in view of court's explanation to the jury that it was a "slip of the tongue," there was no reversible error in a charge: "Remember the serious question you are to investigate—that a crime has been committed."

**5. Homicide ⬥286(2) — Instruction on presumption of malice from use of deadly weapon without qualifying phrase held reversible error.**

Defendant stabbed deceased with a knife, and in the prosecution for murder his evidence tended to establish self-defense, and other evidence was shown which might have reduced the crime to manslaughter in the first degree; an instruction that "The law presumes in a case like this, presumes malice from the use of a deadly weapon," which failed to use the qualifying phrase "unless the evidence which proves the killing rebuts the presumption," was reversible error.

Appeal from Circuit Court, Etowah County; O. A. Steele, Judge.

I. B. Berry was convicted of murder in the first degree, and he appeals. Reversed and remanded.

The bill of exceptions shows the following with respect to the argument of the solicitor:

"The solicitor in his opening argument said to the jury: 'And as he (Berry) is an interested party you have a right to weigh what he said in the case, and, in other words, it is a case where you can break his neck on the gallows or send him to the pen for life.' The defendant objected to this argument, and the court overruled the same, and to this action of the court the defendant then and there duly excepted. The solicitor further argued to the jury: 'You know what your duty is; if I was on the jury I would hang him. There are men in this audience watching to see that (what) you are going to do who want to do the same thing that I. B. Berry did.' The defendant objected to this line of argument that it was being done to prejudice the jury. The court stated to the solicitor that this argument was improper, but did not reprimand him for it, nor instruct the jury with reference thereto; the defendant moved to exclude said statement from the jury; the court overruled the motion, and to this action of the court the defendant then and there duly excepted."

Culli & Hunt, of Gadsden, for appellant.

Defendant's request for instruction, that he was a boy under 16 years of age and presumed by law to be incapable of committing

crime, should have been given. 90 Ala. 602, 8 South. 858, 24 Am. St. Rep. 844; Acts 1915, pp. 128, 577; 1 Wharton, Crim. Law. 364. The court committed error in the statement to the jury that "in a case like this the law presumes malice from the use of a deadly weapon." 133 Ala. 178, 32 South. 125; 129 Ala. 40, 30 South. 348; 94 Ala. 35, 10 South. 667; 107 Ala. 40, 19 South. 37; 94 Ala. 66, 10 South. 522. The argument of the solicitor constituted reversible error. 207 Ala. 99, 91 South. 879; 68 Ala. 484; 86 Ala. 87, 5 South. 775; 161 Ala. 92, 49 South. 803; 74 Ala. 39; 115 Ala. 112, 22 South. 479; 117 Ala. 65, 23 South. 693; 6 Ala. App. 47, 60 South. 539; 133 Ala. 62, 31 South. 953; 176 Ala. 12, 58 South. 307; 193 Ala. 29, 69 South. 122.

Harwell G. Davis, Atty. Gen., and Lamar Field, Asst. Atty. Gen., for the State.

The prima facie presumption that an infant between the ages of 7 and 14 is incapable of committing a felony may be rebutted. 102 Ala. 159, 15 South. 438; 31 Ala. 323, 70 Am. Dec. 494; 90 Ala. 602, 8 South. 858, 24 Am. St. Rep. 844. The oral charge must be construed as a whole, and error can be predicated of an excerpt. 17 Ala. App. 399, 86 South. 139. The argument of the solicitor was merely the expression of his personal opinion. 17 Ala. App. 589, 87 South. 885; 18 Ala. App. 471, 93 South. 46; 68 Ala. 476.

PER CURIAM. Appellant, a negro boy under 16 years of age, stabbed with a pocket knife Claude Sission, a white boy near his same age, on a public thoroughfare in the city of Gadsden, from which wound Claude Sission died within a short time. For this offense the appellant was convicted of murder in the first degree, with the infliction of the death penalty.

[1] Upon the defendant being presented in the circuit court under this charge, and it being ascertained that he was under 16 years of age, and charged with a capital felony, the court entered an order transferring the cause to the probate court of that county as provided by section 9 of what is referred to as the Juvenile Court Law (Acts 1915, p. 577). The defendant was remanded to jail in the meantime. Under the terms of this order, which was entered on February 22, 1922, he was required to appear before the probate court on February 25, following. On this latter date the probate court of Etowah county entered an order returning the cause to the circuit court, where the defendant stood indicted for murder in the first degree. This order discloses the appearance of the state by its solicitor and of the defendant in person and by counsel, and that the court proceeded to hear and determine the question as to whether or not the said I. B. Berry could be reformed, and brought to lead a correct life, and concludes that "the court, after hearing the evidence, is convinced that the said I. B. Berry cannot be reformed and brought to lead a correct life," followed by the order transferring the cause to the circuit court. This order was likewise in full compliance with section 9 of the foregoing act. The trial proceeded in the circuit court with no question raised as to the regularity of these proceedings.

Counsel for appellant insists that a reversal should be rested upon the fact that the probate court retransferred the cause on the day the same was set for a hearing in that court, rather than awaiting the time for the accused to be put on probation, as it were. The act, however, does not so require, and the order of the probate court was fully justified thereby, and upon this question clearly no error appears.

[2] Under the rules of common law a child between the ages of 7 and 14 years is presumably incapable of committing a crime, which presumption, however, may be rebutted by proof that he possesses the requisite knowledge and capacity. Martin v. State, 90 Ala. 602, 8 South. 858, 24 Am. St. Rep. 844. Counsel for appellant insist that this rule of common law has been modified by the juvenile court statute fixing the age for juvenile delinquents at 16 years for males, and that therefore the defendant was entitled to have the jury instructed that a boy between the ages of 7 and 16 years was incapable of committing a crime. This question relates to a rule of evidence, however, and, when such a case is retransferred to the circuit court, the defendant in that court is to be tried under the same rules of law as govern others charged with offenses. There is nothing in the act in reference to such a change as to the rule of presumption, and we are persuaded this insistence is without merit.

[3] We have examined that portion of the argument of the solicitor for the state to which objection was interposed, and, while we agree with the trial court that such an argument was improper, and certainly not called for by any of the exigencies of this case, yet we are not persuaded that any action of the court in this respect could justify a reversal of the cause.

[4] There was also exception reserved to that portion of the oral charge of the court wherein was used the following language:

"Remember the serious question you are to investigate—that a crime has been committed."

Of course as to whether or not a crime had been committed was a question for the jury under the evidence in this case; but, upon attention being called to this erroneous statement, the trial judge promptly corrected himself, and fully explained to the jury

that was a "slip of the tongue." In this we find no reversible error.

This homicide, as previously shown, grew out of a difficulty between this negro boy and white boy on the streets of Gadsden, originating, according to the state's theory, by the defendant brushing against the deceased as he passed him on the sidewalk. Some words were exchanged, and, according to the testimony of witness Reaves, a boy 14 years of age, who was with Claude Sission at the time, the deceased had the defendant around the neck when the defendant stabbed him with a knife; but, according to some of the other witnesses for the state, such was not the position of the parties at the time, as they were facing each other, and "went together as if to fight," and the deceased was seen to hit the defendant. The knife used was a pocket knife, which one witness described as "having no handle, just the lining of the handle, and the blade about three inches in length." All the witnesses agree there was only one stab movement, resulting in a stab wound at the left lower groin. The wound was under the hip bone, a little below the top of the hip bone; and, as described by Dr. Silvey—

"it was a very small stab wound, a little over a quarter of an inch wide. It penetrated deep enough to cut the femoral artery. If the stab had [been] a half inch to the left or right it would not necessarily been dangerous. If it had missed the femoral artery it would not necessarily have been dangerous."

The femoral artery is located just where the wound was inflicted, this artery being a large blood vessel, and the deceased died from loss of blood within 30 minutes.

It appears that defendant and deceased had not previously known each other. The defendant was some several months under 16 years of age, and, it appears from the evidence, was of small size for his age. His evidence tended to establish his plea of self-defense.

A careful examination of the evidence offered by the state discloses that some of the testimony tends to support the theory of murder, while the jury might infer from that of other witnesses for the state that the fatal wound was inflicted as a result of passion suddenly aroused by a blow, and under such circumstances as to reduce the crime to manslaughter in the first degree.

[5] In the oral charge of the court, the trial judge, in instructing the jury as to the offense of murder, and referring to malice as an essential ingredient thereof, used the expression: "The law presumes in a case like this, presumes malice from the use of a deadly weapon." He further instructed the jury as to whether or not the weapon used by the defendant was a deadly weapon was a question for their determination. Sylvester v. State, 71 Ala. 17; Tribble v. State, 145 Ala. 23, 40 South. 938. The defendant reserved an exception to the language as to the presumption of malice from the use of a deadly weapon, above quoted, and insists that in so charging the jury the trial court committed error prejudicial to defendant, which should work a reversal of the cause. We are persuaded the point is well taken. It will be noted that in the foregoing language the court failed to use the qualifying phrase "unless the evidence which proves the killing rebuts the presumption." In view of some of the evidence for the state, which would justify a finding of guilt by the jury of manslaughter in the first degree, this qualifying language was here of great importance.

In Hornsby v. State, 94 Ala. 55, 10 South. 522, the court gave at the instance of the state a written instruction to the jury as to this question of presumption of malice from the use of a deadly weapon without these qualifying words, and, although the opinion does not so expressly state, it was evidently concerning this charge that the following language was used in the opinion in that case, which we here set out as pertinent:

"Whenever there are any facts testified to on a trial for murder, and which are necessary and are relied upon to sustain the charge of murder, and a jury could legally infer from the facts proving the offense that the defendant acted in self-defense, or the homicide was the result of sudden passion engendered by sufficient provocation, and without malice, it is error to charge the jury as to the presumptions arising from the use of a deadly weapon, without accompanying such charge with the further statement, 'unless the evidence which proves the killing rebuts the presumption.' When the facts which prove the killing do not tend to rebut the presumption which the law raises from the use of a deadly weapon, then it becomes incumbent on the defendant by other evidence to rebut the presumption, and failing to meet this burden the presumptions of law are conclusive against him."

Under the evidence in this case the foregoing language is directly applicable to that portion of the oral charge to which exception is here reserved, and sustains the conclusion of error. We are persuaded that this error was prejudicial, such as to call for a reversal of the cause.

We have carefully read the other portions of the charge, and note further on the court used a similar statement with the qualifying language, but, in our opinion, not in such a manner as to correct the erroneous impression which the charge here excepted to evidently conveyed to the minds of the jury, for in the excepted portion of the charge he expressly informed the jury that the law presumed malice from the use of a deadly weapon "in a case like this." When the exception was taken there was no effort on the part of the trial court to correct or explain, and thus the error was emphasized in the presence of the jury. The highest penalty known to the law was inflicted by the jury's

verdict, and upon a careful examination of this record we are unable to hold that this error was without prejudicial effect upon the defendant.

For the error indicated, the judgment will be reversed, and the cause remanded.

Reversed and remanded.

All the Justices concur.