(122 So. 683)

## RUSSELL v. STATE. (6 Div. 294.)

Supreme Court of Alabama. May 16, 1929.

Rehearing Denied June 13, 1929.

Fort, Beddow & Ray and Willard McCall, all of Birmingham, for appellant.

Charlie C. McCall, Atty. Gen., and J. W. Brassell, Asst. Atty. Gen., for the State.

FOSTER, J. According to defendant's evidence, decedent and two others went to defendant's home to repossess a cooking stove, upon which it was claimed one of them had acquired by transfer a conditional (or lease) sale contract, from the alleged seller to defendant; that defendant informed them that if they had a writ of detinue it was perfectly all right, but otherwise not to get the stove; that they said they did not need any law, that law cost money, etc., and went on in the kitchen to take it; that defendant had no gun, but picked up a pick handle and followed them to the kitchen, and they went to the stove; that defendant told them they had to get out and leave his home, and he was not going to give up the stove without the proper means. One of them said to defendant that he must put that stick down, or he would give defendant a "stick fit," and made a motion for his hip and pointed his finger at defendant, and said, "I will shoot you in two, boy." Defendant threw down the pick handle and ran out to where his wife was in the yard, and told her to go in there and tell them to get out of there and leave his house; that defendant then went to a neighbor's next door and procured a gun (pistol) and came back home, and went to the front porch where one of the men was, and told him to stay out of his house; defendant then heard his wife and little kids crying out, and he ran back in the house, and heard her begging them to stop taking out the stove and leave; that as defendant came to the door, deceased said, "didn't we put you out once"; defendant said, "yes, you put me out once, but I am back here again"; that defendant went up to him and caught him by the right arm, and would not let him go with the stove, and told him to put the stove down and get out; that one of the party, not deceased, said "set it down, and I will put that son of a bitch out of here to stay this time," and when he said that defendant shot as the men were putting down the stove, and the bullet, after going through the warming closet, hit the companion of deceased who had made the remark, but he was not killed, and defendant shot again as deceased at the same time kicked defendant, and deceased was hit by that shot, which killed him. Defendant then ran, and went off to another mine some 12 or 15 miles away, where he was later arrested. Neither deceased nor any of his companions displayed a weapon, and if they had one it was not shown.

The testimony for the state was that no threats were made, no anger displayed; that when defendant returned with the weapon he placed it against deceased and shot and killed him without warning or provocation, after having shot and wounded his companion.

Thereupon defendant offered to prove the general character of deceased for violence, turbulence, etc., in the community in which he resided. The court sustained the state's objection on two grounds as there expressed, one that there was no evidence of a hostile demonstration indicating a felonious assault at the time of the shooting, and that while defendant did not have to retreat from his home, he did so, and was then free from danger, but came back into the house with a pistol.

The character of deceased for violence, turbulence, etc., is admissible in a murder case on a plea of self-defense, after evidence of an overt act or hostile demonstration by deceased (or a confederate, aiding or abetting, 30 C. J. 75), which may have led to an honest belief that defendant was in imminent peril of his life or limb in order to give color to such demonstration, as well as to show who was the aggressor, when that is in dispute. Franklin v. State, 29 Ala. 14; Pritchett v. State, 22 Ala. 39, 58 Am. Dec. 250; Roberts v. State, 68 Ala. 156; De Arman v. State, 71 Ala. 351; Green v. State, 143 Ala. 2, 39 So. 362; Griffin v. State, 165 Ala. 29, 49, 50 So. 962; Pate v. State, 162 Ala. 32, 50 So. 357; Lambert v. State, 208 Ala. 42, 93 So. 708; Id., 205 Ala. 547, 88 So. 847; Smith v. State, 197 Ala. 193 (4), 72 So. 316; Watson v. State, 181 Ala. 53 (4), 61 So. 334.

But if the only just inference from the evidence is that defendant was the aggressor, such proof is not permitted. Griffin v. State, supra; Green v. State, supra; De Arman v. State, supra.

If the other elements of self-defense existed, and deceased or a confederate, aiding and encouraging him, then and there threatened serious injury to defendant, he had the right to act upon any hostile demonstration made by either which led to the honest belief that he was in imminent peril, before an actual felonious assault was made, and upon such proof being made, defendant had the right to show the bad character of deceased for violence, etc. George v. State, 145 Ala. 41, 40 So. 901, 117 Am. St. Rep. 17; Keith v. State, 97 Ala. 32, 11 So. 914; Chaney v. State, 178 Ala. 44, 59 So. 604. But there must have been a hostile demonstration either by deceased or one of his confederates. A mere threat without such demonstration is not sufficient. Authorities supra.

But, as we interpret defendant's evidence, it does not tend to show an overt act or hostile demonstration on the part of deceased or a confederate which defendant could reasonably have interpreted to mean that he had just apprehension of imminent danger to life or limb. As we understand the principles which apply, defendant is not allowed to show the character of deceased for violence, etc., until there is evidence of such overt act. For that reason we think the court ruled correctly.

We would not be willing, however, to sustain the court's ruling on the fact that defendant became the aggressor from the mere circumstance that he left his home, and procured a pistol and returned with the pistol, provided, after his return, there was shown without his fault a sufficient demonstration under such circumstances as to impress defendant with the reasonable belief, honestly entertained, that his life or limb was thereby in imminent danger. Defendant had the right to return to his home. Cheney v. State, 172 Ala. 368, 55 So. 801; 30 C. J. 50, 51. The bare possession of a pistol as he returned was not an act of aggression. Terry v. State, 15 Ala. App. 665, 74 So. 756; 30 C. J. 50. But if, when he returned with the pistol, he used it without a hostile demonstration by his adversary, as we think his evidence shows, on account of such absence of a hostile demonstration, he was not justified in shooting; but this did not result from his mere return to his home with the pistol, if he was not otherwise at fault. We understand that this is not in conflict with our cases of Watkins v. State, 89 Ala. 82, 8 So. 134, and Martin v. State, 90 Ala. 602, 8 So. 858, 24 Am. St. Rep. 844.

We think that charges 6, 27, and 28, refused appellant, conflict with the rules of law which we have found to be generally accepted as authoritative. The portion of the general charge attacked in brief seems correctly to assert the same principle. It is the following statements: "This defendant would not be justified under the laws of Alabama in shooting the deceased, to prevent the removal from his house of a stove or range. The law would not justify a homicide to prevent the commission of a trespass upon the doctrine of self-defense." There was not an exception to this portion of the general charge, and therefore we could not put the trial court in error on that account even if it asserted an incorrect proposition of law. McPherson v. State, 198 Ala. 5, 73 So. 387; Day v. State, 199 Ala. 278, 74 So. 352; Montgomery v. State, 204 Ala. 389, 85 So. 785. However, the same principle of law is involved in charges 6, 27, and 28, refused appellant.

We think the charges were properly refused, and the excerpt from the general charge now argued by appellant as being erroneous was also without error, for the reasons which we will now discuss.

It is well understood that deceased and his companions did not have the right to take possession of the stove, if, in doing so, it was necessary to commit a breach of the peace, or to use violence. Street v. Sinclair, 71 Ala. 110; Fuller v. State, 115 Ala. 61, 22 So. 491; Burns v. Campbell, 71 Ala. 271. It is stated in Street v. Sinclair, supra: "But he proceeds at his own peril if he commits the slightest assault, or other breach of the public peace, for, if individuals were thus allowed to redress their own private injuries, the peace of society and good order of government would cease." In another case it is said: "It is a settled principle of our law, that every one has the right to defend his person and property against unlawful violence, and may employ as much force as is necessary to prevent its invasion. Property would be of little value, if the owner was bound to stand with folded arms and suffer it taken by him who is bold and unscrupulous enough to seize it. But when it is said a man may rightfully use as much force as is necessary for the protec-

tion of his person and property, it must be recollected the principle is subject to this most important qualification, that he shall not, except in extreme cases, inflict great bodily harm, or endanger human life. State v. Morgan [25 N. C.] 3 Ired. 186 [38 Am. Dec. 714]. The preservation of human life, and of limb and member from grievous harm, is of more importance to society than the protection of property. Compensation may be made for injuries to, or the destruction of, property; but for the deprivation of life there is no recompense; and for grievous bodily harm, at most, but a poor equivalent. It is an inflexible principle of the criminal law of this State, and we believe of all the states, as it is of the common law, that for the prevention of a bare trespass upon property, not the dwelling-house, human life can not be taken, nor grievous bodily harm inflicted. If in the defense of property, not the dwelling-house, life is taken with a deadly weapon, it is murder, though the killing may be actually necessary to prevent the trespass." Simpson v. State, 59 Ala. 1, 14, 31 Am. Rep. 1; Harrison v. State, 24 Ala. 67, 60 Am. Dec. 450; Suell v. Derricott, 161 Ala. 259, 268, 49 So. 895, 23 L. R. A. (N. S.) 996, 18 Ann. Cas. 636; Crawford v. State, 112 Ala. 1, 32, 21 So. 214.

The rule at common law is that one may prevent an aggressor from entering his home, when the door is closed, even to the taking of life. 1 Wharton, Cr. Law (11th Ed.) 634; 1 Bishop, Cr. Law (9th Ed.) § 858. But once inside peaceably, even though misbehaving, the owner cannot intentionally take his life for his refusal to leave, though he may use reasonable force to exclude him. 1 Wharton, Cr. Law (11th Ed.) § 637; 1 Bishop on Cr. Law (9th Ed.) §§ 589(2), 862.

A felonious homicide is committed by one who inflicts death merely in opposing an unlawful endeavor to carry away his property. He has the right to resist, but not to the taking of life. Oliver v. State, 17 Ala. 587; Simpson v. State, supra; Coon v. State, 11 Ala. App. 46, 65 So. 911; 1 Bishop, Cr. Law (9th Ed.) §§ 861, 876.

Our conclusion is that the charges refused appellant conflict with these well-established principles.

Charges 14 and 17 justify defendant in killing deceased if the latter were committing a felony in defendant's home. It is sometimes said that "the law will justify the taking of life when it is done from necessity to prevent the commission of a felony." But this rule has limitations not now material. Oliver v. State, 17 Ala. 587; Dill v. State, 25 Ala. 15; Noles v. State, 26 Ala. 31, 62 Am. Dec. 711; Simpson v. State, 59 Ala. 1, 31 Am. Rep. 1; Storey v. State, 71 Ala. 329; Bostic v. State, 94 Ala. 45, 10 So. 602; Coon v. State, supra.

Decedent and his companions were attempting to repossess property under a claim of right, by virtue of a conditional sale contract. We do not think a jury would be justified in finding a felonious intent under those circumstances. That intent is a necessary element of such a felony as may be claimed against the parties on that occasion. There is no claim here that they were acting under a mere dishonest pretense of right to the stove. There was therefore no felony, and the charges were abstract, if not bad for other reasons. Morningstar v. State, 55 Ala. 148; Kirksey v. Fike, 29 Ala. 206; Bonham v. State, 65 Ala. 456, 459; Barnes v. State, 103 Ala. 44, 15 So. 901, 903; Johnson v. State, 73 Ala. 523; Morrisette v. State, 77 Ala. 71, 74; McMullen v. State, 53 Ala. 531; 2 Bishop, Cr. Law (9th Ed.) § 851.

The doctrine of want of necessity to retreat when defendant is attacked in his own home as embraced in some of the refused charges has no application when, as here, there does not seem to have been a just cause to believe that an attack was about to be made on defendant such as would justify him in his claim of self-defense.

We think the other refused charges are either abstract, the substance embraced in the charge of the court, violate well-known principles of law, or misleading, and that it is not necessary to treat them each separately. We also conclude that the exceptions reserved to rulings on evidence are without reversible error, as also was the refusal of a new trial, and the other exceptions shown by the record. We have considered all of them, whether argued by counsel or not.

We find no reversible error in the record, and it is affirmed.

Affirmed.

ANDERSON, C. J., and GARDNER and BOULDIN, JJ., concur.