TAYLOR, Judge.
Appellant James White, convicted of robbery and sentenced as a recidivist to life imprisonment without parole, prosecutes this appeal.
I
He contends first that the evidence was insufficient to sustain a jury verdict of guilty of robbery in the first degree. Specifically, he argues that the force employed by him was not employed to effectuate the taking of the stolen property. As a companion issue, he contends that the state failed to prove a prima facie case of robbery in the first degree, since, he contends, the violence or putting in fear was, under the common law, required to precede or to *752 be contemporaneous with the taking of the property.
The state’s evidence tended to show that Mr. Greg Richardson, the security manager at the Gayfers store in Springdale Mall, Mobile, observed a man in the store picking up merchandise at random and not really looking at it. When the man, later determined to be the appellant James White, made a purchase of a pair of shoes, the security staff checked the credit card he was using, and the name on the card did not fit the person. When he again attempted to purchase merchandise using the card, the guards called the credit authorization center and learned that the credit card had been reported stolen. Earlier that day, the business manager of the Brown, Hudgens and Richardson law firm in Mobile, had found the appellant in his offices. Appellant stated that he was looking for a job. Mrs. Janet Perez Spencer, a legal secretary with the firm, discovered that day that her Gayfers credit card and a .38 caliber revolver were missing from her purse and reported the theft. The Gayfers security personnel, acting upon this information, escorted the appellant to an upstairs office in the store, where they called the card owner. Appellant White then admitted to them that the card was not his. Appellant put down some of the merchandise while he was in the security office. When the guards asked to search him, however, he pulled a gun and cocked it. He told them to back up or he would blow their heads off, then grabbed one Mr. Rick Hinton and used him as a hostage to get out of the store. Upon reaching the parking lot, the appellant, still with his hostage, whom he held in a choke hold, sought to take a car parked outside the store. There was some confusion regarding getting the right keys to a car in which he could make an escape. The hostage, Mr. Hinton, then pretended to pass out. Appellant thereupon took a new person hostage to drive the stolen car, and they drove away. Eventually, several police cars cornered the appellant’s car at the Radney Funeral Home and blocked him in. After about 10 minutes’ negotiation with the officers, appellant agreed to surrender himself without a shoot-out. A great deal of corroborative testimony was received. At the scene of the arrest, Sgt. Farmer recovered a box containing shoes from the passenger side of the stolen car and also recovered a wristwatch from the appellant’s right front pocket. These items were the same as the items appellant had attempted to purchase with the stolen credit card.
Section 13A-8-43, Code of Alabama 1975, defines “third degree robbery”:
“(a) A person commits the crime of robbery in the third degree if in the course of committing a theft he:
(1) Uses force against the person of the owner or any person present with intent to overcome his physical resistance or physical power of resistance; or
(2) Threatens the imminent use of force against the person of the owner or any person present with intent to compel acquiescence to the taking of or escaping with the property.”
The elements of the use of a dangerous instrument or deadly weapon or serious physical injury to another must also be proved, to constitute robbery in the first degree. The words “in the course of committing a theft” are defined to include “acts which occur in an attempt to commit or the commission of theft, or in the immediate flight after the attempt or commission.” Ala.Code 1975, § 13A-8-40. Appellant’s contention that the force employed by him was separate and distinct from the taking of the property was the subject of disputed testimony during the trial itself. The commentary of § 13A-8-41, Code of Alabama 1975, states in this respect:
“The Criminal Code adds two new methods of committing robbery. The first, use of threat of violence in an attempted theft, simply combines into robbery the present separate offense of assault with intent to rob....
“The second, use or threat of force in escaping, broadens the scope of robbery. There should be no distinction between *753 cases in which force is used to gain possession of another’s property and cases in which possession is gained and then force is used to retain possession.... The expansion, of course, is limited to threats and assaults to effect an immediate escape.”
We find that the jury was justified in relying on the testimony regarding the stolen articles being recovered from the person of the appellant or from the get away car, in making out the elements of the offense of robbery in the first degree. Even without this evidence, however, the evidence before them was clear to the effect that the appellant did use force and a deadly weapon to effectuate his immediate escape. This, too, constitutes first degree robbery.
II
Appellant contends that the court erred in refusing his written requested charge on the offense of theft of property in the second degree. The evidence of the robbery, the kidnapping, the taking of the get away car was all uncontradicted. Either the jury believed that this robbery took place or they did not. The jury did choose to believe the robbery occurred. The initial fraudulent use of the credit card to obtain the property was not the gravamen of the robbery in this case. It was the use of the deadly weapon to effect an escape or in the alternative, a taking of the property after his theft was suspected. The court did not err in refusing to charge on second degree theft.
III
Appellant next contends that he did not receive a fair trial because the prosecutor used his peremptory challenges to systematically exclude black people from the trial jury. In this case, there was no proof of a systematic exclusion of blacks by the prosecutor. Absent such proof, the case is not subject to reversal on that ground. See Carpenter v. State, 404 So.2d 89 (Ala.Crim.App.1980), writ quashed, 404 So.2d 100 (Ala.1981).
IV
Appellant next contends that application of the Habitual Felony Offenders Act in his case violated the cruel and unusual punishment provision and the equal protection of the law provision of the United States Constitution. These issues have been decided adversely to the position of the appellant in a large number of cases, which we will not cite here. We further find that the sentence is not disproportionate under the guidelines of Solem v. Helm, 463 U.S. 277, 103 S.Ct. 3001, 77 L.Ed.2d 637 (1983).
V
Appellant next contends the court erred in denying his motion for mistrial based on remarks made by the prosecution. The prosecutor referred to other indictments against the appellant. The court promptly gave a curative instruction. We find that the court did not abuse its discretion in denying the motion for mistrial. See Kelley v. State, 405 So.2d 728 (Ala.Crim.App.), cert. denied, 405 So.2d 731 (Ala.1981).
This case is due to be affirmed.
AFFIRMED.
All the Judges concur.